With your argument in Case 13-485, Comptroller of the Treasury of Maryland v. Wynne. Mr. Brockman. Mr. Chief Justice, and may it please the Court. A State's broad power to impose a personal net income tax on its own residents is grounded in the special benefits that a State affords to its own residents, particularly because they are residents. That is, things like public schools, social services programs, medical assistance services, and, of course, the right to vote in the process that determines both the level of those benefits and the level of taxes that are paid in return for them. There is no reason that a State should have to subordinate this power, this taxing power, just because another State exercising an equally legitimate taxing power, but on a very distinct ground, is taxing a portion of that income merely because it was earned within that State's borders. All right. You're relying on the principle that life is not fair, right? Life is not fair. Maryland taxes are, because they — They're taxed on their entire income regardless of where it is earned. Well, but as your friends on the other side point out in their example, pages 22 to 23 of their brief, if you do the internal consistency test, it ends up not being equal. What it ends up is imposing a special tax. They would call it special, right, the special nonresident tax on those who live in one State and work in the other, that people who live in the State and work in the State do not have to pay. That doesn't sound — that sounds unequal, whether fair or not. Your Honor, let me try and explain why I disagree that it's unfair. The special nonresident tax and the county tax both apply, one to residents, one to nonresidents. One has been upheld, the special nonresident tax, as a complementary tax to the other. But we can abstract from all of that, because our position as a constitutional matter is that Maryland is not required to provide a credit at all. So it would be just as accurate to do the math this way. The special nonresident tax accounts for six-tenths of 1 percent of total personal income tax collections, both resident and nonresident, combined, State and local. If we said instead there's only one tax, it's a State income tax, and you may take a credit up to the lesser of what you paid the other State or 99.4 percent of what you would have paid to Maryland, whichever is lesser, we would have the same result. Well, but that's the case now. But if we uphold a situation where you charge a special nonresident tax in a way that is a special tax on people who live in one State and one nonresident state, then you're free to raise it. Well, I don't think we are, Your Honor. It's been upheld by the Maryland courts because it's complementary and it's set at the lowest rate that any county resident pays. Well, it is now. Do you think there's – could you increase the special nonresident tax beyond the lowest rate that the county tax is? I don't think we'd try. I think the reason it's set at the lowest is because we did not want to be in a situation where we were discriminating against nonresidents who are entitled to the community set residence. Let me be specific. If you live in California, you have a hot dog stand in Hawaii, all right? It has $1,000 income. It comes back to California. You pay 13.5 percent California tax. Hawaii wants to charge another 12, so you're paying 25 percent. Can California say, that's fine. We give them no credit for the 11 percent they're paying in Hawaii. So the bottom check that you get is $750, not 1,000. But if your hot dog stand were in California, the check would not be 750. It would be approximately 900. Okay? Is that constitutional or not? It is, Your Honor. Okay. Move to Hawaii is what you say. And a lot of people do that for tax reasons. That's right, Your Honor. The Windsor are citizens, though, and we prefer that they express their preferences through voice, not exit. What is your best case that you can rely on for your answer to Justice Breyer? What's the best case you can cite? Complete Auto? I don't think that works for you. I wouldn't cite Complete Auto. No, I wouldn't if I were you trying to justify the answer either. What would you cite? What would your best cite be? I might start with Jefferson Lines, because it demonstrates that there are situations where only one State can claim to be taxing a value on the specific basis it is taxing it on. But many other States can be taxing it on a different basis. That results in multiple taxation of the type that we're talking about here. Here, by hypothetical, the basis is identical. It's called an income tax. Okay? And they run it in both States the same. And the problem that I would like you specifically, and you are addressing with Justice Kennedy, is what California says. Open your hot dog stands in California. You go and open them in every other State, in any other State, but particularly Hawaii, you will pay $125 more in income tax, not some flat of a thing, not property tax, not some other kind of tax, in income tax. Okay. Now, that's constitutional because? Because California taxes the income from hot dog stands without regard to where the hot dog stand is located. The additional tax burden there is the result of the combination of two States' taxes, Hawaii's and California's. And can't you say? Alito, the question is not whether California can tax the income of its residents wherever they make it, or whether California can tax all income earned within the border of California. The question is whether it can do both. And that's the question with respect to you. Can you tax all income earned within your border, whether by resident or by nonresident, and also tax income earned by your residents in other States? The Tax Economist's brief points out that this, what you've done, operates exactly like a tariff, because it provides an incentive to earn income in Maryland and not outside of Maryland. Now, do you dispute that as a factual matter? And if you don't dispute it as a factual matter, why shouldn't this tax system meet exactly the same fate as a tariff? I don't dispute the mathematics. They lose me when they switch from tariffs to income taxes, but I'm not an economist. The difference, though, is that the we're talking about the effect of two States' taxes. Now, they've talked about two States' taxes by using what they call a heuristic device of hypothesizing that the other State has the exact same set of taxes. Fine. We can do that, too. But the point is that it's the combined effect. That means that Maryland's taxes, the validity of Maryland's tax will turn on how another State exercises its taxing power. Every State. That's my problem with this. I don't understand why it is that California has to yield in this California-Hawaii situation. Why is it that the State that taxes all the income of its residents has to yield rather than the State that taxes all income earned in the State? Why can't you just as well say, you know, Hawaii shouldn't be able to sock on an addition? Well, there are good reasons. I mean, as far as fairness is concerned. Now, maybe it doesn't work the same way with respect to the imaginary negative commerce clause, but as far as fairness is concerned, I don't see the difference. Your position is that the residents, the domicile and tax worldwide income, period. And I think everybody agrees with that. The question is, does the domicile have to give a credit because somebody else is also taxing it? Do you stop having the power to tax worldwide income because other States make tax on a different basis? I think that is the question, Your Honor. Must the State yield to another State's taxation of a portion of that income, but on a very distinct ground, a territorial ground? The argument that State would make is, well, we think you earned it here, and if you did, we have a right to tax it. Our argument with respect to our own residents is, we think you live here, and we the winds indisputably do, and that you benefit from the same privileges. I'm sorry, Your Honor. Well, I was just going to say it's not a question of yielding. The way you test under our precedence whether one State has to yield or not is to say, well, let's suppose each State does exactly the same thing. Neither one is yielding. And as indicated earlier, the example in the Respondent's brief is that if each State did what we're talking about, people who work in one State and live in another would pay higher taxes overall than people who live within one State and work in the  And that sounds to me like a tariff. Well, perhaps this is another way to address the internal consistency analysis and demonstrate why we think it doesn't do very much good analytic work here. If you take just a single sentence in one of this Court's opinions in Curry, income may be taxed both by the State where it is earned and by the State of the recipient's domicile. Flunks internal consistency. That's it. If you add the feature that there's a credit or not, that's the issue here. And if, as in Chickasaw Nation, that the offering of that credit is understood correctly as an independent policy decision that States make and is not of constitutional magnitude, is not done as a matter of constitutional compulsion, then the internal consistency problem remains. We think the internal consistency test works better, though not perfectly, when we're talking about two States taxing on the same basis, because there it may detect instances where one State is overreaching jurisdictionally, exercising a power that it does not lawfully have. The Respondents don't argue that Maryland lacks this power. They acknowledge it. And they acknowledge it as an attribute of Maryland's sovereignty. If it were CITUS v. CITUS, source v. source, there the internal consistency test can tell whether sometimes, whether the multiple taxation it detects is a result of discrimination or of extraterritorial application of laws. But that neither of those doesn't appear. Scalia. That's not a Commerce Clause test, though. The cases where we've applied that test, has that been decided under the Commerce Clause? The internal consistency test? Yeah. I think it happens. I thought it was a matter of State power. Well, I think this case does not present any issues that are unique to the Commerce Clause case, because it's undisputed that Maryland's tax does not facially discriminate, is evenhanded in its application. Only after the tax liability is determined does it take into account the source. And there it gives an advantage to the people who have earned some of it out of State. So what we're left with is an argument that the discrimination adheres in the supposed malapportionment itself. And that question, the question of apportionment, fair apportionment, I think is common to both the due process and Commerce Clause jurisprudence of this Court. And I think Maryland's tax survives that scrutiny under both forms of the law. But what about we're dealing with an individual, because it's a Chapter S corporation. But what about a corporation that is domiciled in Maryland? I think Maryland, like all States, uses an apportionment formula for both domestic and foreign corporations. We don't believe this case implicates any question of how corporations would be taxed. The residence principle that we're relying on as a basis for the broad taxing power and the benefits that one receives as residents is unique to individuals. It's always been articulated in cases involving individuals. So we're talking about personal income taxes here. Kennedy, I suppose you could argue that some States are very good corporation laws, and that's why corporations are domiciled there. They're, let's say, director-friendly, or that they are laws that are easy to apply and well understood. That's a significant advantage. I think that's absolutely correct, Your Honor. I think this Court's precedents recognize some benefit that's accorded merely in the fact of domiciliary status, whatever, however that's defined. And but in the net income tax situation for corporations, I'm not aware of any State that tries to assign a value to that. Because non-domiciliary and domiciliary corporations are treated equally. Now, I do know that Delaware, known to be hospitable to corporations for incorporation purposes, does impose a tax, a yearly franchise tax that ranges from $180, from $220 to $180,000 annually, and that it's not based on income. It's based on a very complex measure of the worth of the entire enterprise. Sotomayor, can we go back to the Chief's initial question? If we applied complete auto, would you fail the internal consistency test? And if you fail it, why shouldn't we apply that test here? Would you — if we applied it, would you fail? I don't believe we would, because I think the proper construction of that test in this situation asked about the internal consistency of the rationale that Maryland is advancing, that is, are we being consistent in our structure — in structuring our tax so that it reaches residents on their entire income, regardless of whether it's earned.  Scalia, I would argue, and I find it surprising, that it involves both the Commerce Clause and any other constitutional prohibition, okay? Whereas, your opponents, the question they say is presented is whether a State tax that exposes interstate commerce to double taxation is saved from invalidation under the Commerce Clause, merely because the States are — why do you want to take on the whole Constitution when they only want to argue about the Commerce Clause? Your Honor, we think — And I thought it was the latter that the case involves. We'd be willing to defend it under any provision of the Constitution, but, Your Honor, is that what's right? That's big of you. It really is. And the Chief concern that this Court has articulated of its dormant Commerce Clause jurisprudence, that is, protecting against measures that are protectionist in nature and benefit in-Staters at the expense of out-of-Staters, is not present here. There is no discrimination or extraterritorial overreaching, and the tax is valid. Thank you, Counsel. Yes. Mr. Feigin. Thank you, Mr. Chief Justice, and may it please the Court. I'd like to begin, if I could, by the interaction of taxes imposed on the jurisdictional rationale of residency and taxes imposed on non-residents by virtue of their doing business in the State. I don't think there's any constitutional rule that says a State can only impose one tax or the other. And to the extent the internal consistency test might suggest that the special non-resident tax that Maryland imposes, which is a special tax imposed only on non-residents, may be taking too great a portion of non-residents' income. I think it's kind of backwards for Respondents to be able to raise that challenge, because they are residents. They pay only the residential income taxes and, in fact, benefit from any overtaxing of non-residents. The other thing I would say to you is that if you look at the tax scheme as a whole, including the tax on non-residents, I mean, in terms of non-residents, it's not a tax on non-residents. Well, Your Honor, I think the very important thing to understand here is we're talking about two very different kinds of income taxes with distinct jurisdictional rationales. Maryland is taxing Respondents' income because they're residents of Maryland. Other States are taxing their income because they do business there. I'm not sure you would necessarily look at them and mix and match. And I'm not aware of any case in which this Court has taken a completely nondiscriminatory tax, like Maryland's county income tax, which applies at the same rate to a county resident, no matter where he earns his income, in State or out of State, and finds that tax to be unconstitutional by yoking it to some other tax, like the special non-resident tax, that's going to look discriminatory no matter what other scheme of taxes you throw it into. But if you really did think there was a problem here, I think you would look at it as a tax on non-residents. Breyer. I thought that we held that quite a lot in respect to corporate taxes. The three cases we found here, J.D. Adams, Wynne White Prince Hunneford, Central Greyhound of New York, all said that corporations, when they're taxed on their income by a State, that they have to apportion in a fair manner. Is that right? No, Your Honor. I don't think that's precisely what they hold. I think the most salient distinction between those cases and this one is that none of those cases addressed a tax that was justified on the basis of the taxpayer's domicile, as the Maryland county income tax is. In Wynne and Greyhound, the Court didn't even address any argument that the tax was based on domicile. And in J.D. Adams, although the highest court in Indiana had believed that the tax was justified on the basis of domicile, this Court looked at the structure of the tax and concluded that it wasn't that that justification didn't actually fit the tax. You know, when you say it seems a little bit of hair-splitting, you say it's a test on residency, but not income. But we have previously said a tax on sleeping measured by the number of pairs of shoes you have in your closet is a tax on shoes. So you can call it residency, but if it's still using income as its basis as opposed to property values or whatever else these residency taxes are based on, then why isn't it a tax on income? Let me be as clear as I can, Your Honor. It is a tax on income, but the jurisdictional rationale for the tax is different from the jurisdictional rationales employed by other States. Kennedy, that's a due process argument. The question here is whether or not if a number of States impose taxes like this, it would be an additional burden on interstate commerce. Well, first of all, Your Honor, if every State That is the question, isn't it? Yes. I mean, I think that is part of the analysis of the question. But if every State enacted an income tax that looked exactly like Maryland's county income tax, that applies at one uniform rate no matter where income is earned, every U.S. citizen would pay income tax at the exact same rate no matter where they earned their income. Except if they also imposed a special nonresident tax, then that changes the whole scenario. That's right, Your Honor. In addition to what I said to Justice Kagan about that earlier, let me add a further thought, that if you really thought there was a problem with the interaction of resident and nonresident taxes, then I think it would probably be much more logical to locate the problem in the nonresident tax rather than the resident tax for three reasons. First, the nonresident tax is the only one that's triggered by economic activity that crosses State lines. Maryland's county income tax applies whether the business is done in State or out of State. Second, any differential incentives that a taxpayer might have to do business in one State versus another aren't arising from the county income tax, which applies evenly, but instead from the differential tax rates that various other States in which their nonresidents might have. So Illinois might impose a 3 percent rate, Idaho a 5 percent rate, and Iowa an 8 percent rate. And the third thing is that the resident tax is the only one that the taxpayers actually have some political power to get in there and to influence. I just want to add to that. But in your answer that you gave to my question, the hypothetical 100 percent, that would be a burden on 100 percent of interstate commerce, because a resident who did not go into interstate commerce would pay less. So there is a burden. All you're saying is that, well, if there's going to be a burden, it could be a great big one. So, Your Honor, there is, in some cases, a Maryland resident will be taxed more on commerce that they conduct outside of Maryland than inside of Maryland. But I don't see why that's discrimination attributable to Maryland. It arises from the combination of the income taxes of two States. And I think for the reasons I was just explaining to the Chief Justice, one could file a perhaps more persuasive brief challenging the nonresident tax which the Maryland taxpayer is exposed. And that's not a reason for invalidating the uniform residence tax. And, Justice Breyer, if I can get back to your point. Breyer, Justice Kennedy asked a question I was curious about. I wanted you to address that specifically. And you're just trying to say who's at fault. I don't know who's at fault. Switzerland has a tax on milk from cows that are pastured at less than 5,000 feet. Well, Your Honor, it's not. It's Belgium's fault. They don't have any mountains. I mean, I don't know who's at fault, but that is a discriminatory tariff. Well, Your Honor, explain why if someone has to be at fault, I think it's the nonresident tax. But let me explain why nobody. I don't see why anyone has to be at fault. Let me see. In the corporate area, it was a tax on gross income in that first case. And so I don't know why human beings – well, no, I won't go into that issue. I won't. Your Honor, it wasn't – Your Honor, just quickly on J.D. Adams, in addition to it not being a domicile-based tax, it was a tax on gross receipts, which are taxes on transactions, the entire revenue of those transactions. But let me explain why I think neither tax here is at fault. Well, just to understand what you said a minute ago, are you saying that if this same claim were brought by a nonresident challenging the nonresident tax in Maryland, that would succeed? No, Your Honor. I'm saying it would be a stronger claim, but let me try to explain now why I think both taxes can peacefully coexist. All right.  It would be a stronger claim, but also a bad one. No, Your Honor. I don't think it's irrelevant. I think it's quite relevant because the only tax that Respondents have paid, and the only one they're challenging, is the even-handed residential income tax. And the existence of this other tax that could be perceived to have an undesirable effect shouldn't affect the validity of the tax they've actually challenged. But let me put it this way. They're linked together. I mean, the special nonresident tax is set at a particular level in relation to the county tax. It is obviously intended to reach nonresidents in a way that the county tax reaches residents. I'm not sure you can artificially separate them. Well, Maryland has upheld the special nonresident tax not on the ground that it's not discriminatory. The Maryland courts recognize the special nonresident tax is discriminatory, which the county income tax clearly is not. And they've upheld it under this Court's compensatory tax doctrine. Whether the Maryland courts were right on that or whether they were wrong on that, I don't think it should affect the validity of the county income tax, which is the question presented in this case. But the reason I think that nonresident taxes can peacefully coexist with resident taxes is that although they're both income taxes, they're on distinct jurisdictional rationales. And when two taxes are imposed on the same value based on distinct jurisdictional rationales, it's not impermissible double taxation under the Commerce Clause. And let me give an example. If an operation manufactures all of its widgets in State A and sells them all in State B, it's clear under this Court's decisions in McGoldrick v. Berwyn-White Coal Mining Company and Armco v. Hardesty that State A can impose a manufacturing tax that is measured by the value of the revenue of the sales, even though the sales occur in State B. And State B can impose a gross receipts tax on the sales that occur in State B, which is paid by the seller, the mining company, or the widget manufacturer in my example, which is also a tax on that same value, the taxes that occur in State B. The reason that's permissible is because they're distinct jurisdictional rationales, as is what we have here. One is a tax based on residency, and the other is a tax based on doing business in the State. Previous apportionment cases this Court have considered have all involved the second rationale, doing business in the State. And in that circumstance, it makes sense to try to divide up the pie, because you don't want California asserting, well, we're responsible for 90 percent of your income, and Oregon says we're also responsible for 90 percent of your income. But there's no real way to compare apples and oranges and to say that a residency-based tax is better or worse than a tax based on doing business there. And so you don't have the same conflict between the taxes and have to divide up the pie in the same way that this Court's previous cases have suggested. Kagan, if we were to rule against Maryland, how many States are in the same position as Maryland, either because they do a county tax themselves or because they allow local jurisdictions to impose their own taxes? I'd look at pages 17 to 18 of the Municipal Lawyers Association brief, Your Honor, but if I could add just one quick sentence beyond that. Even States that do offer credits of the kind Respondent is seeking would be affected by decision in this case because it would constitutionalize that requirement and create constitutional questions about whether a credit is — when a credit is required. Thank you. Scalia, I have one more question. Sure. Do we — the Federal Government allow credits for all foreign income tax paid? And must — do you think it must do so? There are limits. It does offer a foreign income tax credit. There are some treaties about this, I believe, but I don't think there's any overall   I think that it would violate the overarching principles of the national law. In and of itself it wouldn't violate the negative foreign commerce clause, right? I think if it did, Your Honor, Congress could legislate that out of existence. Thank you. Thank you, counsel. Mr. Perala. Thank you, Mr. Chief Justice, and may it please the Court. Justice Alito, you asked my friend on the other side whether it's correct to say that if you perform — you know, if you look at the real economic analysis of this tax and see what it does to interstate commerce, whether it amounts to a tariff. And my opponent conceded that it does. A tariff is the quintessential unlawful tax under the Dormant Commerce Clause. And I'd like to illustrate why by pointing to Justice Breyer's hot dog stand. Again, as my opponent on the other side conceded, a small business like a hot dog stand could operate in two different States. It might not be California and Hawaii, but wherever it might be. And it would be exposed to 100 percent double taxation. The only limitation would be the rate that the State chooses to set on that. And that would apply, and I would point the Court to page 5 of the Council on State Taxation brief, that would apply to 90 percent of the businesses in this country. When you do business in California and you live somewhere else, your hot dog stand is going to be subject to pretty high property taxes. It's going to be subject to special use taxes. It's going to be subject to taxes that they have for one time to finance the schools. It's going to be subject to da, da, da, da, da. Okay? And so what they're really saying is, well, nobody claims that California can't do that and Maryland can ignore it for purposes of their income tax. It's tough to do business in California, according to some, not the Californians. But nonetheless, this is just one more burden that you have to suffer. And that's because they're on different – you heard the argument. So what's your response to that? My response is that in cases like Container Corp., Jefferson Lines, and others, this Court has said, look, we can't and don't want to constitutionalize everything about State taxation. Different States impose different taxes, impose different burdens. And, you know, we're not going to try to stop them from doing so. We can't stop them. They have that power. The line we're going to draw, and it's the line the internal consistency test draws, is that we're not going to allow States to structure their taxes so that they're taxing more than – they're exposing income to more than 100 percent of the tax base. Yes. Suppose we had a Maryland resident and all that resident's income is earned out of State, and each of the States where the income is earned tax at or above the Maryland rate. That would mean, I suppose on your theory, that the Maryland resident owes nothing to Maryland because he could take the credit for all that he's leaving the residents without anything, without a penny, from this resident who may have five children that he sends to school in Maryland. Justice Ginsburg, a couple of responses to that. Firstly, I agree that it can happen. I think it happens rarely. And just as a practical matter, let me point out, Maryland has reciprocal agreements with its surrounding jurisdictions, Washington, Virginia, Pennsylvania, et cetera, where they say we're going to ignore commuting of that sort and we're going to tax people at their residence. But even if that weren't so, I think the key point here is that that resident is paying substantial taxes to State B. And residents of State B who happen to do work in the State in Maryland are paying substantial taxes to Maryland. So this comes out on a watch. Maybe so or maybe not so. Why can't — suppose not many other people in Maryland are in this position or the reverse. This man is getting a free ride. Well, I disagree respectfully, Justice Kennedy, that he's getting a free ride. I mean, he's paying, first of all, again, substantial income taxes to the other States where the income is earned. He's paying substantial property taxes. But he's getting a free ride off Maryland school. No, he rents the property. Two answers. First of all, I think it's important to point out that 42 other States don't seem to have found this problematic. Maryland is an outlier here, and the other States are not here to defend its rule. But I also think it's worth mentioning that, yes, there will be occasional cases where a State resident does not pay any tax. Can there be some minimum tax imposed on a resident? Minimum. In Justice Ginsburg's hypothetical, 100 percent of the income is earned from out of State as five kids go to school, and they use all of the local facilities. Can Maryland impose any tax based on residents? I think the short answer to that is if it's an income tax, no. Under your hypothetical, which is that he earns no income inside the State. But this Court has, you know, it's not a school support tax. You know, I think that it's possible that you could impose a school support tax. Can you give me the right numbers in what you said? We've heard different ones. You just said how many States provide a credit such that a resident has to pay the higher of the foreign State's tax on its business there for the State's tax on income? You said 40 States impose some kind of credit like that? No, Justice Breyer. To be clear, every other State has a credit, a full credit, unlike the one. So every other State. How many are the every other States? Forty-two States. Forty-two States. How many States are in the position of Maryland where they don't impose a credit, where they do not grant a credit for some or all of the income? Zero. Zero. Wisconsin has a limitation on its credit, as one of the topside briefs points out. The limitation has to do with whether they credit taxes paid to localities in other States. But Maryland is the only State that limits its credit in this way. But Maryland does. Don't some States allow localities to impose taxes that do not give a credit? So, for example, the New York City income tax would be the classic example of that? Yes. Justice Kagan, as my opponent on the other side said, the IMLA brief catalogs some foreign localities that impose local income taxes. Some of them don't appear to have a credit. But I think it's important to point out, and we did in our responsive brief, that the IMLA's math is substantially exaggerated. I mean, for example, they've pointed to a lot of the local taxes they point to are in Pennsylvania, thousands of them, in fact. And they're simply wrong about Pennsylvania. Pennsylvania imposes a credit. It just happens to be codified in the State statutes. And the same thing is true with Kansas. They say Kansas is an example. Kansas only imposes an intangibles tax, which operates for their interest. But you recognize that there are jurisdictions, local jurisdictions, that impose a tax and don't give a credit, just like this one. I think it's fair to say that there are some. I think it's also fair to say that the number is substantially lower. Because before you said there was zero. No. Sorry, Justice Ginsburg. I said that there are no States that don't impose, that don't allow the full credit on other States. Well, Maryland does allow the credit against the State income tax. It's just the county tax. Well, I mean, not to split hairs, but as this case comes to the Court, you know, the state tax is, in fact, a State income tax. The Court held that in the Frye case and the Maryland court of appeals. Yeah, but the lion's share of it would be the State part, not the county part. And on that, Maryland does give a credit. I think the key point here is that if you conceive of this all as a State tax, which is how, again, how the Maryland law stands and how the case comes to the Court, what Maryland has done here is say, we're going to arbitrarily cut our credit essentially in half. We're going to give you half the credit. Now, some of the topside briefs, the IMLA brief, for example, make an issue of that. They say, hey, this is just a rational compromise. We're going part way. But the rule Maryland suggests is not a compromise. The rule they suggest is you can impose complete double taxation. And it's a rule. Kagan. Kagan. Mr. Perl, you're not saying that we have to or that we should establish a priority rule as to different taxing schemes, are you? You're not saying it has to be source-based over residence-based or vice versa? I think that the holdings of this Court in Standard Oil, Mobile Oil, Central Oil Road are that in a situation where one State is taxing on the basis of residency and the other on the basis of source, it is the State of residency that yields. Oh, so you are saying that that's the priority rule. Well, I'm saying that in the case where there is the risk of overlap, yes. Now, the other side has construed our brief as saying that we're requiring apportionment, right? The whole point of their reply brief is how can it be that the due process cases say you tax everything wherever earned and the Commerce Clause requires you to tax nothing outside the State? I want to just be clear that that's not the rule we're suggesting. Well, let me ask you. I mean, suppose we were to say that what Maryland is doing is not okay, but then States could choose. Some would do a source-based tax, some would do a residency-based tax. If you had a situation like that, it seems it could lead to double taxation in exactly this kind of way. If you were living in the wrong State and all of a sudden the combination of one State having a pure source-based and one State having a pure residency-based tax was going to lead to double taxation, why is that any different? So I think that if you had that situation, and of course you don't because all the States do this the same way, but if you had it, I think there would be an argument to be made that that tax would be unconstitutional because it would produce massive double taxation and, you know, the Court has said residence yields in that situation. But I want to be clear that this is a much easier case. Here we have a situation where the tax is simply not internally consistent. And, Justice Sotomayor, to answer your question earlier, there's no way to argue that it is, and Maryland to this day refuses to actually apply the test. But it's only internally inconsistent because of the special non-resident tax. And your clients don't pay the special non-resident tax. So why should we worry about it in this case? The reason you have to worry about it in this case, and let me say, Mr. Chief Justice, there are other ways to rule in our favor without doing internal consistency. But if that's the approach that you take, the only way the internal consistency test makes any sense is if you look at both the residence tax, you know, the inbound tax and the outbound tax, because the whole point of the test, as the Economist brief points out, is to look at what happens when two States have the power to tax, one on the basis of residence and one on the basis of source. So to suggest that you would only look at the inbound piece makes nonsense of the test. That's not how it's ever been applied. And I'd like to see that. Ginsburg You're not disputing the proposition that the State of Residence can tax worldwide income, can impose an income tax on its residents worldwide, wherever they earn it. You're not questioning that proposition? Shanmugam I'm not questioning that. As a matter of due process. Ginsburg Well, as a matter of what? Would you question it as a matter of the Dormant Commerce Clause? Would you question that the State of Residence can tax worldwide income? Shanmugam Would I question it as a matter of the Commerce Clause? I think that the gravamen of our position, Justice Ginsburg, is that States have the raw power, right, putting aside all their factors and all their States' taxes to reach their residents' income wherever earned. But the Commerce Clause operates to force them to structure their taxes in a way that avoids double taxation. Now, there will be other ways. Ginsburg But then what you're saying is they don't have the power to tax worldwide income. Shanmugam No. Ginsburg But what if another State has a tax based on source? So the going-in proposition, they can tax worldwide income, is subject to what other States do. And if other States have a tax, then the resident's State has to receive. Shanmugam Two answers to that, Justice Ginsburg. First, under our position, which is not something we've invented for purposes of this case, but is the steady holding of this Court for 80 years, the question is not what other States are actually doing. The question is whether Maryland's tax is structured in such a way that eliminates the pervasive risk of double taxation. Because, of course, as the Chief Justice pointed out in the opening argument, other States can exercise their right to tax on the basis of source to any degree. And so what this Court has said is we're not going to make the constitutionality of the tax turn on the shifting incidence of the other 49 States. We're going to require that you structure your tax so you're not going to open the door to all this double taxation. Ginsburg You talked about what this Court has been doing for I don't know how many years. Have we ever had a case under the Dormant Commerce Clause where a resident is complaining, an insider is complaining? I mean, the Dormant Commerce Clause case is involved outsiders who say this State, where I don't vote, is imposing something arbitrary on me. Here we have an in-State person complaining under the Dormant Commerce Clause that its State is discriminating against it. Is there any other State case where it's an insider complaining, not an outsider? There are a number of cases, and let me give them to you. Boston Stock Exchange, for starters, is a resident complaining about their own tax. The complete auto or the Commerce Clause was imposed. Goldberg is the same, although you ruled against the taxpayer in that case. The test was applied. And most importantly, I think, J.D. Adams, Gwinn, and Central Greyhound are all domiciliaries. Now, they are, of course, corporations, but my opponent, I don't think, has offered any rationale to distinguish between the two. The question this Court has always identified is, is this tax double taxing? Ginsburg Well, one thing, one obvious distinction is the corporation doesn't have five children to send to school. Well, you know, I think that that rationale maybe proves a little bit too much, because, of course, corporations do receive an awful lot of benefits from their domiciliary states, and especially the states where they have their principal place of business. And I would argue, although there's no, you know, empirical evidence in the record that they probably use more in the way of services, fire, water, structure, legal, you know, legal mechanisms, et cetera. And yet this Court has said you absolutely cannot double tax, and it's forbidden. And, you know, again, Maryland, the only distinguishing factor they have for those cases, and actually this is an important point I would like to address, the only point either Maryland or the United States has used to distinguish J.D. Adams and the like is the idea that the tax in those cases was on gross receipts. That argument has been long since foreclosed. This Court held in Mormon, both the majority and the concurring opinion, that there's no analytical difference between net and gross income in this area. And furthermore, in Westinghouse v. Tully, the Court said, look, there's no difference for our analysis between a tax, a burdensome tax imposed on interstate transactions and a burdensome tax, excuse me, a burdensome tax imposed on interstate income. They said it cannot be, quote, unquote, that you can impose that unlawful burden by doing it in the aggregate. And so I think the idea that that distinguishes our cases is not available to them. Kagan, Mr. Perilla, we said in this American Trucking case, we said we were going to allow a State to impose a neutral local tax even though it violated internal consistency. Why shouldn't we see this as pretty equivalent to American Trucking? In other words, a State saying we're going to impose a small tax to ensure that you are paying for some of the very basic services that we provide. Well, I guess several responses, Justice Kagan. First of all, there's nothing small about this tax. Maryland is imposing, by their own lights, $50 million in double taxation on its local businesses annually when they operate across State lines. Well, I'm sure that if you aggregate the American Trucking tax, it was a lot of money, too. Well, maybe. The distinction that Justice Breyer drew for the Court in that case was that in American Trucking it was a fee. It was a flat fee and it was imposed only on intrastate transactions. He said no interstate transactions, no interstate commerce appears to be at issue in this case. In this case, by striking contrast, Maxim, the S Corporation that earned this income, operates essentially in every State in the country. And, of course, under S Corporation principles, the income that the WINS earned through that is pass-through income, just like a partnership. And furthermore, you know, if you look at the how the tax affects other State residents, again, 90 percent of businesses in this country are organized as pass-through entities or sole proprietorships. And so you have all of that income crossing State lines, and every time it does, there's a tariff, there's a barrier at the State lines that says you're going to pay twice. And this Court has never, I don't think, approved a tax like that. American Trucking certainly did not. I'd like to mention a couple of other things. The IMLA brief and Maryland's reply brief suggest that if you accept our position, Maryland has no choice but to make its tax code more regressive. I'd just like to point out that that's not so. Maryland, to take just one example, could raise the top marginal income tax rate to close the gap. That would impose the difference only on, you know, higher income citizens, and it would  The thing that Maryland has to do is to raise the tax rate. I don't understand the argument. Justice Scalia, Maryland can close the gap however it likes. It can raise the property tax. That's what I think. It can raise the income tax generally. The point that I wanted to make is that if the suggestion is that this tax is somehow unfair, because as a necessary result, you're going to soak people with lower incomes, that's simply not so. That's not what Maryland has to do to fix the problem here.  It's a problem that almost every State has to deal with. It's a problem that only Maryland has. Every other State with an income tax allows the credit in full. Let me also mention another argument Maryland makes in its reply. It suggests that S Corporation owners or S Corporations should not be heard to complain about double taxation because C Corporations are double taxed. That misunderstands the concept of double taxation in the Commerce Clause cases. In a C Corporation, you have the first tax imposed on the, you know, the corporation itself, and then down the line you have a tax imposed either by the same State or another on the person who's getting a dividend. That's not the same person being taxed twice, nor is it anyone being taxed twice for crossing State lines. And so both the dividend recipient and the corporation are indifferent to where they live and where they work. There's no double taxation there in the sense of the hydraulic pull, pulling the commerce into the single State. And in fact, in that respect, it's just like Jefferson Lines. In that opinion, this Court said the reason this is different from Central Greyhound and the only reason we're not striking this tax down is because the first incidence falls on the bus ticket buyer and the second incidence falls on the bus company. And so no one is being discouraged from crossing State lines. That's not how the Maryland tax operates. Sotomayor, I think they didn't do it on gross income, but just said every resident has to pay X amount. As an income tax? As an income tax. I think the result would be the same. It's not being based on gross income. It just says every resident has to pay $1,000. Right. Justice Sotomayor, I think the result would be the same because, and as I stand here I'm thinking about this, I believe it would be the same because the question would be, as the Chief Justice points out, is the tax internally consistent? And, you know, that sounds obscure, but all it's really saying is, is that tax creating a risk of pervasive double taxation for anyone who does interstate commerce? But why doesn't Justice Sotomayor's hypothetical, isn't it exactly the same as the American trucking hypothetical? You just distinguished the flat tax versus the percentage income tax. I thought that that was your principal distinction of American trucking. I think the thing about American trucking that made it unique, Justice Kagan, and I confess I don't completely understand the rationale of American trucking, but I think the thing that makes it unique is that it's a flat fee for use of the State services. That's what Justice Breyer said for the Court in that case. I thought that that was what Justice Sotomayor was positing, a flat fee for use of the State schools and everything else that comes along with being a State resident. All right. Well, perhaps then, you know, maybe that tax could survive under the rationale of American trucking, too. But, again, I think it's important to point out this is not that case. I mean, this is a case where it's clearly an income tax, it's clearly pegged to, you know, adjusted gross income, and it clearly does not offer the credit that every other State offers. And, you know, I think just to illustrate how this functions in reality, the other side suggests, well, this is just, you know, some sort of we're asking for a special benefit for, you know, people who own these big interstate companies. If you own, for example, an independent taxi and you happen to take rides, give people rides across the line into Delaware and Pennsylvania, you're going to be double taxed under their theory on any piece of that commerce that can be taxed by Pennsylvania or Delaware. Whereas the exact same operation that happens to be an incorporated bus company could not be constitutionally double taxed. Scalia. But, you know, there's an inequity either way. The inequity on the other side is you have two neighbors side by side, their kids both use the school, one of the neighbors makes most of his income out of the State, and you want to say that would not be taxable. Whereas the other neighbor makes all of the income in the State and pays a very high tax. You know, that's not fair either, is it? Three responses, if I could, Justice Scalia. First response, as I mentioned earlier, it's going to work the other way as well. If you look at this across 50 States without State lines, as you're supposed to for Commerce Clause purposes, people who are nonresidents are going to be paying taxes into the State. Secondly, even if there is some inequity there, the lodestar of this Court's you do, you can't create the substantial nationwide risk of double taxation. So that has to be the first principle. That's quite interesting, because New York City's normal population, I think now it may have gone down to 7 million, but out-of-State residents that come in are 25 million a day who work in the City. So New York's 7 million pays for those 25 million. I'm not totally sure how the New York City income tax regime works, Justice Sotomayor, but I think the point I was driving at is, you know, States have different policy preferences. You know, they want to have a tax on this and a tax on that. It's almost always permissible. Well, it's your third. Yes. That's what I was getting to. The line is drawn at the idea that you can't double tax. And the third point I was going to make is, you know, Maryland is complaining about a very small cabin limitation that this Court has always enforced on their taxing power. And as this Court has said in a number of decisions dating all the way back to Chief Justice Marshall, States have some limitations on what they can do with taxation under the Commerce Clause. But what they bought in exchange for, you know, agreeing to those limitations in the Constitution is a nationwide network of commerce. They don't have barriers at State lines. There are no tariffs, as Maryland admitted this functions as. They can, you know, they can take advantage of that nationwide network. They can market their goods and they can market their employees to any State in the country and vice versa. And so, I think the idea that this is a one-way ratchet and that Maryland is only losing in this proposition is not correct. And just as a final matter, let me just say, with respect to the idea that residency is a get-out-of-jail-free card, I'd like to quote Chief Justice Marshall from Brown v. Maryland. The distinction between the tax on the thing imported and on the person of the importer can have no influence on this part of the subject. It is too obvious for controversy that they interfere equally with the power to regulate commerce. I think that's the bottom line here. And if the Court has no further questions, I'll submit. Roberts. Thank you, counsel. Mr. Brockman, you have three minutes remaining. Thank you. The bottom line is not that a tax on the thing is the same as a tax on the person. That is true in the trilogy of cases that the Wins mostly rely on, the J.D. Adams cases where the gross receipts tax was understood, at least at that time, to be very different from a net income tax going all the way back to 1918 in U.S. glue. And the reason was because it was viewed as taxing the transaction itself. The net income from the transaction is different. It's the thing that the person receives and enjoys in their home State. And people choose to live in States for reasons different from the ones that they consider when they choose to do business elsewhere. They may choose because there are lower property taxes relative to sales taxes, as in Maryland. Maryland is not unique. The Chief Justice can probably correct me if I'm wrong about the number, but there are 92 counties in Indiana, and they all impose a local income tax. None offers a credit. And the fact that other States aren't here is just a harbinger, because if this becomes a constitutional rule, they will be. The reason we have offered a compromise, and why it is a compromise, is because this tax falls on the State's own residents. They have the capacity to change it. That's always been an important consideration from McCulloch all the way through United Haulers. And the norm that supposedly prefers source to residents as a basis is nowhere to be found. It's a norm only. And in Burnett v. Brooks, in answer to Your Honor's question, this Court said that the United States has never believed that when it decides to limit its own sovereign taxing power over its own residents that it's doing it because it has to. It's never been thought that. And the States could not have thought that when they were joining the union, that the unique relationship between a State and its own residents would be — could not be accounted for in the State's tax system, that the Constitution would determine how, as Mr. Perrella says, the States can structure their own taxes. Maryland made some choices, and they ought to be able to make the choices they did. They said that the taxes one pays to the county should not be different based on factors that the county services are indifferent to. You don't get 18 percent of a fire truck or a day of school because you earned 70 — 82 percent elsewhere. You get 100 percent just like your neighbor does. And in that respect, the reason the rates do matter and the reason you should nevertheless be very uncomfortable about it is because under the rule that they're proposing, Maryland's tax system is at mercy of the other States' taxes. In the — in the fold-out section of the Joint Appendix at page 77, you see there are 39 jurisdictions. There's a 40th not shown there. They taxed a portion of the income. Twenty-seven of them taxed it at a higher rate than the Maryland and Howard County tax combined in 2006. So, here we are. Thank you. Thank you, counsel. The case is submitted.